We'll hear argument first this morning in Case 17-1672, the United States v. Haymond. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. There is no dispute that the district judge's finding, by a preponderance of the evidence, that Respondent possessed child pornography was constitutionally sufficient to revoke his supervised release and re-imprison him under Section 3583e3. The Court of Appeals Is there any other area of the law in which we permit imprisonment by a preponderance of the evidence? Well, Your Honor, there are areas where, I mean, that are precisely analogous to this. For example, parole and probation revocation. Well, in parole, the original sentence was already X number of years, and the State granted a benefit and said, instead of serving 10 years, we'll let you serve 8, if you behave. If you don't, you've got to finish serving the 2 that we imposed originally. But where do we ever permit someone to be jailed for an additional period of time other than their original sentence on a preponderance of the evidence? There was no jail for an additional period of time here. Petitioner's original sentence, which was authorized by the jury's verdict, included a 10-year period of supervised release, which is precisely analogous to a 10-year term of automatic parole. His re-imprisonment upon revocation of his supervised release was only 5 years, which is less than the 10-year. Sotomayor, that's almost like harmless error argument. If his term – there's no question now that his term of supervised release extends further than his original sentence, no? Your Honor, it does not extend further than his original sentence. His original sentence – Well, his jail sentence does. No, Your Honor, it does not. His original sentence was 38 months of imprisonment, which he served, to be followed by 10 years of supervised release. On revocation, he received a 5-year term of re-imprisonment to be followed by 5 further years of supervised release, in exchange of 10 for 10. The Court was clear in Morsi v. Brewer, where it held that a jury finding beyond a reasonable doubt is not required for parole revocation, that a defendant whose parole is revoked doesn't get credit for time he spent out in the community on parole. The circumstances of this case are precisely analogous. Sotomayor, But we're still back to the same – we're still – no, it's not quite. Because he was sentenced originally to the 38 months, not to another term of jail. Now we're adding on to that an additional term of incarceration and an additional term of supervised release. So we've stretched the maximum of his earlier term. Your Honor, I don't think we have any more than would be true under a parole system. Well, you're trying to mix – to compare apples and oranges. In the parole situation, the original sentence was the additional sentence that he got. Here, he only got the 38 months. A jury didn't find facts sufficient to give him the additional years he received by the judge's finding. Well, let me say two things about that, Justice Sotomayor. The first is that his original sentence, if you look at the judgment, does include the 10 years of supervised release. He was fully aware that supervised release could be re-invoked and he could be re-imprisoned for violating its conditions. And that is, in fact, what happened here. Well, let's talk about this. Could Congress impose a system that says on the day of sentencing, you're going to be sentenced to X number of years. But if a judge finds that you committed X act, you can be sentenced to, instead of 38 months, to 8 years. Can a judge do that under Apprendi? Well, Your Honor, I'd need to know a little bit more about – Not a charged crime. It's just an act. Whatever the act may be. So, Your Honor, if your question is, can a judge impose a sentence that says you'll, for example, spend 5 years in prison and then there'll be some period after that during which if you – a judge finds if you commit a certain act – No, no, no. We know under Apprendi, I think it's pretty clear under Apprendi, that if the sentence says you committed X crime, you get 5 years. But if you did it with racial hatred, Apprendi, and a judge finds that via preponderance of the evidence, you get 8 years. Apprendi says no. You can't do that. The jury has to find that you did that additional element, correct? That's right. I'm trying to figure out why a judge now gets to say, after you've been sentenced to the 5 years, instead of 5 years for the original crime, I'm going to find, via preponderance of the evidence, after you've been sentenced to the 5 years, that we really should have given you 8 years. Because you've now committed a new crime. Or a new – not a new crime, but a new – well, a new crime or a new act, whatever that act may be. Your Honor, and that's not what's happening here. What's happening here is that the judge is finding a violation of the sentence that the judge imposed. This is different from Apprendi in that it is precisely analogous to parole, a proceeding in which – parole revocation, a proceeding in which the court is squarely held – I'd like to understand what question we are deciding here. What Justice Sotomayor is raising is really a revolutionary argument that would bring down the entire system of supervised release, which has been the law for, what, 35 years? Is that the issue that is before us in this case? No, Your Honor. I think that's – Is Mr. Dunn making that argument? No, Your Honor.  The only relief he sought in the court of appeals and the relief the court of appeals granted was re-imprisonment under section 3583e3. He didn't cross-petition, so the only question before this Court is whether there's really some difference between re-imprisonment under 3583e3 and section 3583k. And there really isn't any difference between those two. But what about the fact that without finding that he committed a violation of 3583k, without that, the minimum term of imprisonment, the minimum term would be 0 years. But with that factual finding, it becomes 5 years. Well, let me say a few things about that. First of all, the Court held in Morrissey that these kinds of sentence administration proceedings, where what the judge is looking at is whether there is a violation of the terms of the sentence, is a proceeding to which the Sixth Amendment doesn't apply. So Apprendi is a Sixth Amendment-based rule, and therefore, it doesn't apply by its terms in the circumstance. Would that be true if, instead of a 5-year minimum, the minimum sentence was a sentence of death? Would the government take the position that the Sixth Amendment doesn't apply there, either? Your Honor, I think, first of all, there might be some Eighth Amendment concerns. I didn't ask about an Eighth Amendment question, Mr. Feigin. I asked about the Sixth Amendment. So assuming that the original sentence that was imposed, that had the death condition on it for certain violations, didn't itself violate the Eighth Amendment, I don't think there would be necessarily a Sixth Amendment problem with this. I think that has to be your answer, right? Yeah. Yeah. There could well, Your Honor, be due process issues or other Eighth Amendment issues, but I don't think it would be a Sixth Amendment issue. The second question is, remind me what Apprendi said, because I kept dissenting. And so I thought that it says this. We're fine if you stick with that, Justice Breyer. All right. Look at the statute. You look at the statute and you see if, in fact, there is a fact that permits the judge to go higher than the statute says, does it permit him? If it does, the jury has to find it. The question is, can he go beyond the 10 years that the statute says, if and only if X exists. And if that's the case, you have to find it. Is that Apprendi? Well, there's an exception, Your Honor, for the fact of a prior conviction. Yeah, all right. That's because of the – that's because of the – forgets the exception. I wrote that. And I think one thing that this case points up is that Apprendi only applies in a context – because the Sixth Amendment-based rule, under the text of the Sixth Amendment, it only applies in the context of a criminal prosecution. But this is – I'm not got to my question. I have to think – I'm a good follower of Apprendi now. I look at the statute. The statute says 10 years. We can sentence more unless you find X. Then it's 15. So that X has to be found by a jury. That's Apprendi, as I understand it. Now, if that's the case, I look at the statute here. What does the statute say? I think it says 10 years. Right. So if, in fact, it's 10 years, then, because of tradition, cases E, he served five. He has supervised release of five. And so you can send him back to jail because of fact X, as long as you don't go beyond 10. But if you go beyond 10, just as you needed to find the fact by a jury in basic Apprendi, so you should have to find the fact by the jury here, because there's no real distinction. Now, is – does my argument make sense? Well, Your Honor, that argument was raised in the court of appeals, and even the court of appeals rejected it because the 10-year maximum is only for one part of the sentence for the original term of imprisonment. There's also a separate portion of the sentence for supervised release. Correct. Now – In the sentence – let me just preface this by saying, even if you thought that was the rule, we should win, because he spent 38 years – 38 months, excuse me, in prison on his original sentence, and the re-imprisonment term is only 60 months, or only 98 months at that point. Maybe you should, but I want to know the answer to my question. And the reason that I thought it was the same is once you revoke supervised release, that means he's right back in jail. And so if his total time in jail is greater than the statute allows because of the finding of the fact that wasn't found by the jury, no. And that's where the line should be drawn. Now, I have the problem of having to write or agree to an opinion, which is not yours. But I would like to know what your opinion is of that. Well, Your Honor, I don't think that's the right way to think about it. And that's not even the argument they're making. That's not the argument any of their amici are making. And that's because I think they recognize, consistent with this Court's decision in Morrissey v. Brewer, which addressed the parole context, and it was reiterated in Gagnon v. Scarpelli, which addressed the probation context, there are multiple parts to this sentence. One was the original term of imprisonment. Another was the term of supervised release. And it's the same in the parole context. Kagan, you keep talking about the parole cases. But the parole cases are cases that are very different from Justice Breyer's hypothetical, because by definition, in parole, you cannot serve longer than your original sentence. So you never get to the question in the parole cases that Justice Breyer is asking you about, which is whether, once the judge-made finding takes you above the original authorized sentence, it creates an apprendi problem. Isn't that right? Isn't that the difference between parole cases, is that you can never get into this problem of serving longer than the original authorized sentence? Well, two things, Justice Kagan. Once again, as I was saying to Justice Sotomayor, we don't actually have a re-imprisonment term here that is longer than the original sentence, because the original term of re-imprisonment is for five. And the second thing I'd say, which I think may more directly – Well, that just incorporates a different argument about how the supervised release is baked into the original sentence. But I'm talking about in normal terms. People think, oh, this statute authorizes a punishment of up to 10 years. Now, what Justice Breyer is saying is, now maybe somebody, might not be this person, but somebody, is serving 12 years instead because of a judge-made finding. And I would have thought that that's a pretty simple case under Apprendi. I also would have thought it's a pretty simple case under Apprendi if all of a sudden a mandatory minimum pops up as a result of a judge's finding. That's a pretty simple case under Allain, which was also a pretty simple case under Apprendi. So, you have two problems here. One is, a mandatory minimum is suddenly popping up because of a judge-made finding, and one is, a longer sentence than originally authorized is suddenly popping up because of a judge-made finding. Your Honor, I don't think this is a longer sentence than is originally authorized. Let me draw the analogy to parole more explicitly. I don't think there's any difference here between the 38-month term of imprisonment to be followed by 10 years of supervised release, and a sentence to 158 months of imprisonment with mandatory parole after 38 months. Well, counsel, Congress thought there was a difference, right? I mean, we had parole systems previously, probation systems previously, and Congress chose to abandon that system. And why doesn't that choice have consequences? And why isn't one of those consequences the jury right? And why is the government so anxious to avoid having the involvement of citizens in this process? Well, Your Honor. It would be a rather simple thing to convene a jury, wouldn't it? We don't think it would be simple to convene a jury, although that would be a better remedy than facially striking down the statute. But historically, there has never been a jury involved in this type of post-judgment sentence administration context. And historically, there's never been this kind of system before. Congress self-consciously created this system. And I guess I'm just struggling. I just don't understand why the government resists the involvement of a jury of a man's or a woman's peers. Well, first of all, Your Honor, we are relying on this Court's decisions in Morrissey and in Gagnon that make clear that there can be re-imprisonment for violation of conditions of a previously imposed sentence that was authorized by the jury's verdict. They don't even dispute that. And the reason that I've explained to Justice Alito. I mean, we're just talking. There's a lot of words. But, you know, does the choice of Congress to move away from parole and probation have no consequence? It doesn't have any consequence that's relevant here. Okay. If we disagree with you, do you lose? Well, it would depend how you disagreed with me, Your Honor. If you disagree with me such that you think that Respondent here had a jury trial right, then. But they're not the same thing. They are different. The Congress, when it bothered to revamp sentencing in this country radically, it actually intended to and accomplished something as opposed to doing effectively nothing. So, Your Honor, one way in which I think supervised release is different, and this gets back to Justice Kagan's question, is that there is a way under the supervised release statute for the term of re-imprisonment to exceed even the period of conditional liberty that's represented by the supervised release itself. Well, I mean, that's an interesting question. And I think it's a hard one. And it's not briefed. And I just don't – I'm having enough trouble with what I understood to be the issue presented by this case without deciding whether we should overrule an enormous amount of precedent and wipe out probation and parole or decide this novel question, which isn't presented here. Mr. Heyman has to make an as-applied challenge to the part of the statute to which he objects. And he is not in this situation where he is required to serve a term of imprisonment that exceeds the statutory maximum. That's right, Your Honor. And I think that would be – He's certainly in the situation of the mandatory minimum. You agree with that. So let me say a few things about that, Your Honor. The first thing I would say is, again, because this is a context in which the Sixth Amendment doesn't apply, I don't think Apprendi would by its own force apply. The second thing is that the jury's verdict authorizes re-imprisonment under K just the same as the conceded authorization of re-imprisonment under E-3. The third thing I would say is that what they're really asking for here, even if Apprendi applied, is a bespoke application of the Apprendi rule. Apprendi does not say that if you are subject to a heightened sentencing range that you are entitled to an even higher standard of proof than would apply to other kinds of fact findings. It says you receive the same standard of proof. And they agree that the standard of proof in a revocation proceeding like this is a finding of fact by a judge by preponderance of the evidence. That's what they concede would be relevant under E-3. And the fourth thing I would say, just very quickly, Your Honor, is there is no additional fact finding that is required under K. The exact same finding of fact that he possessed child pornography by a preponderance of the evidence is the same finding of fact that would lead to revocation under E-3 as to revocation under K. The only difference is the legal consequence. I'm sorry. Roberts. What I think was number two on your list, which is, well, the jury found this and the jury's finding includes whatever K allows and therefore there's a – I mean, that's kind of a, like, bitter with the sweet argument. You know, you're going to get supervised release, but if you do, you're going to have to buy into what might present constitutional problems. And simply because the jury found – I mean, it can't be the case that whatever was provided for sentencing upon a conviction by the jury is, you know, home free regardless of any constitutional problems it might entail. Well, Your Honor, there may be limits, but they concede in their brief that the jury's verdict authorized re-imprisonment under E-3 based on a judicial finding by a preponderance of the evidence. And I think they had to concede that under this Court's precedence. And what they're trying to do is to draw a distinction between E-3 and K. And I don't think there's a distinction to be found there. No, I'm not sure that's responsive. My question is, yes, of course, the jury's verdict did include this and this. That's how the statute reads. But that doesn't automatically mean that it's blessed with – it's sort of like a waiver. I mean, simply because the jury's sentence includes it doesn't mean that everything that follows is necessarily constitutional. No, Your Honor. And that's not our argument. But they're trying to make an argument that the jury didn't authorize these kinds of revocation proceedings. And our point is that if they're acknowledging that the jury's verdict does allow – does include this term of supervised release, which comes with conditions and consequences for violating those conditions, K is one of those conditions. Mr. Feigin, I have, I guess, a fundamental problem. The way this provision reads, it basically says if you commit X crime, you get a minimum of X number of years re-imprisonment, and we lift the cap on your supervised release. You know, if it looks like a duck, quacks like a duck, walks like a duck, it's a duck. And what it seems to be saying is if you commit this crime, you go to jail for this minimum number of years. I thought that it was baked into our criminal system that if a judge is going to make a finding like that, that you committed a crime, and that it's going to increase either your minimum or your maximum of whatever the original jury or whatever the jury found, that you're entitled to a jury to find that fact beyond a reasonable doubt. So you say Apprendi was Sixth Amendment, but Apprendi was both the Fifth and Sixth Amendment, and the two interacted in the Apprendi decision. It was a due process concern as well. And so I have a due process concern as well as a Sixth Amendment concern, which is if we're asking a judge to find you committed a crime under the Fifth Amendment, how can we permit re-imprisonment, something as drastic as re-imprisonment, on such a low burden of proof? Well, Your Honor, as a due process matter, that's exactly the issue that was facing the court in Morsi v. Brewer in the parole context, where someone who's on parole for life could potentially be re-imprisoned for life. And the court set out some minimum due process protections that were provided to them. But we've already talked about the differences between parole and this. In parole, he was sentenced to life. He was given a benefit to be gotten out early or go back to jail to finish his term. It's a very different situation than being told, you're going to serve 10 years, 15, 20. You've done with the jail time. And now, if you go out, we can now re-imprison you for 50 years minimum, as opposed to 20. So, Your Honor, let me explain a few reasons why you shouldn't consider this a new criminal prosecution. First, it arises in the context of active supervision by probation officers. They're not simply reacting to arrests. They're going out and supervising and trying to reintegrate these defendants into the community. Second, the revocation proceedings are initiated by probation officers, not by prosecutors. Prosecutors could ask the probation officers to do it, but it's ultimately up to the probation officers whether to do so. Third, there are both substantive and procedural limits baked into the statute, as well as possible as applied due process limits that prohibit the judge from imposing a sanction for the violation of the supervised release conditions that is punishment for the offense that gave rise to the violation. Sotomayor But I don't see how a minimum can be anything but. Because here the judge very clearly, the judge and the court of appeals, very clearly said that if this had been a crime that would be determined beyond a reasonable doubt, they don't think the government could win. And the judge even said that he thought the sentence was inappropriate to the nature of the allegations and proof in this case. Feigin Well, Your Honor, the question, the guidelines themselves adopt this philosophy that in sanctioning the violation of supervised release, there, it goes on a breach of trust theory. So what you're trying to do is to deter a violation. Sotomayor But how does a mandatory minimum, the Allende problem? Where we said that really should be determined by a jury, not a judge. How does a mandatory minimum deal with the breach of trust? Once you've tied a judge's hands in the sentence, then how does that promote the respect for the breach of trust? If the judge doesn't believe that's the right sentence, why would that promote the needs of the jury? Feigin Well, the jury should have some leeway to decide that these are particularly egregious types of breaches of trust by defendants as to whom it's particularly concerned that when they get back into the community, will commit crimes that resemble their previous crimes that are harmful to the population. Kagan Well, but the question is where Congress's leeway stops because the Constitution kicks in, and that's what we've talked about in Apprendi and then in Allende. And where we've said the Constitution kicks in is that judge-made findings are not good enough to trigger mandatory minimums or to trigger changes in the statutorily authorized range. And both of these, at least mandatory minimums, is present in this case. And the arguments that you're presenting also raise questions about moving the statutory range. And it just seems, if this isn't a clear-cut violation of Apprendi and Allende, like, what is? A judge here is making a finding, and not only any old finding, a finding of a statutory violation, and he's made not a judge, not a jury, by a preponderance rather than by a reasonable doubt. And the result is somebody spends a very significant amount of time in prison. So, Your Honor, let me just very quickly, before I reserve the remainder of my time, address the mandatory nature of this, which this Court has also addressed in the parole context. If you look at Black v. Romano, which is cited in our briefs, this Court has recognized that in some circumstances, but it depends on the facts and circumstances, a defendant might be able to claim that the mandatory revocation of a period of conditional liberty is a substantive constitutional violation. And the Court, in fact, found one, such a violation in Bearden v. Georgia, where there is mandatory revocation of probation based on the failure of a defendant to pay fines that he just didn't have the means to pay. But we're a far cry from that here. Revocation of parole, to me, seems like a denied benefit, whereas revocation of supervised release seems like a penalty. Your Honor, I really don't think there is any difference between the two. It's a period of liberty in reimposing the sentence up to, the prison sentence up to what it was, so denying that benefit. Here, though, by adding a chunk of time on, potentially, it seems more like a penalty rather than a denied benefit, at least if you look at it in that way. Well, as a period of conditional liberty that's included in the sentence, this is exactly like the type of automatic parole that existed at the time of Morrissey, as we've pointed out in our brief. And this Court has considered things like revocation of good time credits to be the denial of a right and nevertheless not attached full protections to them. And it's considered the revocation of conditional liberty to implicate a defendant's liberty rights in the parole context and nevertheless not attached full due process, let alone Sixth Amendment protections. If I might reserve the remainder of my time. Thank you, Counsel. Mr. Lund? Mr. Chief Justice, and may it please the Court. I like the verb that Justice Sotomayor used at the beginning, stretches. What 3583K does is it stretches what the original conviction, the amount of sentence that was authorized by the jury's verdict in this case. It aggravates the punishment in the sense that where the original verdict allowed only a zero to 10-year sentence that a judge could have imposed, to a mandatory five-year sentence, all the way up to life in prison. And I also think that Justice Gorsuch's comment that if the Sixth Amendment didn't apply, would this also apply if you had a, if the sentence was a death penalty? And the potential life in prison without parole, which 3583K allows, is the same as the second most serious punishment that's allowed in the law. And those types of heightened punishments that 3583K allows create tremendous due process problems, and they also create tremendous problems with regard to the right to a jury trial. What about the government's argument that you are conceding that revocation and suspension of parole is okay? The E-3 reads that the Court may revoke a defendant's supervised release to allow him to serve in prison all or part of the term of supervised release. The term of supervised release is, has a very minimal, it's a fairly minimal sanction in that it's designed to rehabilitate a prisoner who has just finished his prison sentence and to re-transition that prisoner back into the community. Is E-3 okay? E-3 is okay to this point. Just a yes or no on that, if you can. Yes, with regard to Mr. Heyman. And to the extent that it is a sanction that has the non-punitive purpose of rehabilitation and reintegrating a defendant back into the community, then to then to understand what you mean there. Yes, with regard to Mr. Heyman, because Mr. Heyman can't be brought, he's not going beyond the statutory maximum here. Is that what you mean? Yes. So he has no, he himself has no claim that the statutory maximum is being stretched. That's, well, the statutory minimum is being stretched. Yes, that's what I said. He has no claim that the statutory maximum is being stretched. That's correct. So when you said to Justice Kavanaugh, yes, with respect to Mr. Heyman, that's why. Yes. So to the extent that E-3 allows an effective supervised release regime, it doesn't necessarily equate with criminal punishment. But when it does equate with criminal punishment, in other words, when you have a situation that there is no rational connection between the non-punitive purpose of which is what's happening in this situation, then you can have a situation that could create a problem. So why couldn't a remedy, instead of requiring a jury trial or striking down this part of this provision, which the Tenth Circuit did, why couldn't a simple remedy, in your view, be adequate that says the judge can do anything within the original sentence? Because. And if your re-imposition requires a minimum of 5 years and that's what you got, we strike that down. The judge doesn't have to do that. He can do whatever he wants within the original imprisonment time or the original terms of supervised release, maximum terms. That would not be a violation of Apprendi. But it could be you could still have due process problems with that type of situation. For instance, if someone had been sentenced to 1 year and then the judge, by preponderance of the evidence, was allowed to impose a far more restrictive, far more punishment-related sentence, let's say of 9 years, he might very well have an argument that that was a violation of due process rights. Because he's looking at a certainly a heightened incapacity as a result of that type of sentence. Breyer. Let me try this again. Apprendi. Any fact that by law increases the penalty for a crime is an element that must be submitted to the jury. All right. Now, your basic argument is mandatory is something that increases the penalty for a crime. Yes. Okay. Got that one. Whatever I say here would also affect E3. And I think it would for this reason. It would raise this question. Statute. 10 years imprisonment, 5 years supervised release. Okay. Now, he serves a sentence, 9 years, which he serves. Supervised release. He then, after a year passes, supervised release is revoked on the basis of a fact. Now, it could be the fact he didn't report. It could be any fact. At that point, when he's sent back, he will be on the basis of that fact in prison for more than 10 years. But the statute said 10 years. And so he is being put in prison on the basis of a fact that was not found by a jury. Now, if I decide for you this may be an unusual case, you know, E doesn't, isn't that serious? Normally, but, but, but, it would create a complication. You would have to do something like call a jury in those few cases. Now, what do you think of that? The Sentencing Reform Act, when it was initially enacted in 1984, may be the answer for you in that type of situation. Because the Sentencing Reform Act allowed exclusively if a person violated a new law, the, as a violation of their supervised release, the judge could hold them in contempt. So if you have someone who's been sentenced to nine years, it would allow a judge, and they're on the brink of getting to the sentence that was authorized by the jury, the judge could still find them in contempt, but you wouldn't necessarily he would not be in a situation where he would be finding facts that would go beyond the period of incarceration that was authorized by the jury's verdict. That would be how you would deal with that situation, I think. And how long could the contempt penalty be? Well, if you're dealing with contempt, there are rules under this Court's holding in Bloom that if you're looking at more than six months, then you're entitled to a jury trial. Alitoson What could I ask you about a lien? What a lien held is that the touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an element of the charge defense. So you're saying that all of the conditions of supervised release are elements of the charge defense? All of the – well, my understanding of a lien is that if you increase the mandatory minimum or you increase the maximum that was authorized by the jury, that that in effect creates a – you aggravate the punishment by creating a new element, and that makes an entirely new crime. Right. So all of the – all of the conditions in Mr. Heyman's supervised release were elements of the offense? They – well, the conditions that are imposed are not unlike a contempt situation. You're told to do certain things, and if you don't do those certain things in a court order, then you may be found in contempt, or in this instance, you may even be sentenced to prison if necessary for a very limited period of time, so long as it still is designed to reintegrate the former prisoner back into the community and is designed for rehabilitation purposes. Your answer is no. They're not elements of offense in the standard case where 10 years in prison is a statute plus 5 years supervised release. That plus E makes clear that if supervised release is violated and the whole thing doesn't exceed 10 years in prison plus supervised release, you don't need a jury. You need a jury when you give him a punishment that exceeds, because of a fact, what the initial punishment was in the statute. That, I thought, was apprending. Yes. So the answer, I guess, is no. Alain obviously adds to that with regard to a mandatory minimum. Mind you. So you have a situation in Alain, and this is how this Alain applies directly to Mr. Hayman's situation. Alain holds that by aggravating the punishment at either the mandatory minimum or heightening the maximum, that you create a situation that heightens the loss of liberty and it empowers the prosecutor to get the judge to do something that the judge wouldn't ordinarily do. And that's precisely what happened in this case. The judge did not want to impose a 5-year mandatory minimum. What does the Sixth Amendment protect? Does it protect the rights of people to have a jury of their peers, or does it protect the rights of judges to exercise discretion? The Sixth Amendment provides further assurances to the right to jury trial that had already been guaranteed in the Constitution under Article III, Section 2, Clause 3. And the Sixth Amendment, in fact, was not needed to ensure trial by jury in cases of crimes. That's the Wood case cited in the reply. I mean, I thought the reason for the jury trial right was fundamentally distrust of judges. They didn't want these things to be in the hands of judges who had historically been appointed by the Crown and were thought to be beholden to the Crown. They wanted it to be in the hands of ordinary citizens. So how does that get turned into a regime that protects the prerogatives of a judge to decide what the term of imprisonment should be? You're talking about supervised release? Well, you're saying that there's a problem with the mandatory 5 because it ought to be up to the discretion of the district judge. Yes. And that's based on the Sixth Amendment right to a jury trial. Yes. Okay. So what you want is the judge to have the discretion to impose something less than 5. Yes. How do you connect that with the right to a jury trial? Again, a jury trial applies when someone has committed a serious or atrocious crime under Callan v. Wilson going all the way back to 1888 or any public wrong, which is the Bloom case, which is a case that didn't necessarily involve a criminal prosecution because it dealt with the contempt. So the right to a jury trial is when you are looking at what amounts to a prosecution for a serious or atrocious crime. And it doesn't matter what label you put on it, whether it's revocation or a sentencing guideline or contempt or whatever. That's what the holding in ring is. This is nothing more than a label for what really amounts to the trial of a crime. I thought of a way of putting this question for this case. Let's imagine a statute that says up to 10 years in prison for possession of drugs with intent. Okay? A certain amount. Then the statute adds the following. If the offender had a gun, there is a 3-year mandatory minimum. But in no event will the total sentence exceed 10 years. Have you got that? So it's no more than 10 years no matter what. But it has to be at least 3 if there's a gun. Now, does the jury have to find whether or not there was the gun? I believe they do. Is there any authority on that? Well, to some extent, it may be the O'Brien case. It's somewhat similar. It's a situation where there was a gun and then the issue became whether or not it was a machine gun. And the court said that the drastic increase from 5 years to 30 years actually created a substantive offense. And that needed to be presented to the jury. So I think this is similar. If you have a drug offense and then there is the issue of whether or not you have a gun, then in that situation, that has to be presented by the jury if that's going to cause him to have a mandatory minimum 3 years. What do you think of the government's proposal as a fallback that rather than strike down the statute, you convene a jury and have the jury make a finding? There are two responses. First of all, it's just a simple question as to why you need to do it at all, which is if you really are looking at a situation that you want to prosecute someone by guilt beyond a reasonable doubt, why don't you just prosecute them by indicting them? But beyond that, if you then want to bring the jury trial system into the revocation system, it creates immense difficulties. It really does potentially transform. Well, that's what you want, though. You're saying the violation is the lack of a jury, yet you're saying as a remedy you don't want a jury. I understand that. And we obviously believe that this type of situation based on the allegations that are being made are something that needs to be presented to a jury. If you're not satisfied with the jury as a remedy, that raises the suspicion that the mandatory minimum is really what you're objecting to, not the lack of a jury. But there are problems. And this court has looked at that type of situation, for instance, in both the Jackson case and in the Pennsylvania Board of Parole versus Scott, where it describes what happens when the court tries to create that jury in the revocation process. You would have burden of proof issues. You'd have confrontation issues. You'd have potential double jeopardy issues that would rise. There'd be potential self-incrimination issues. You'd be dealing with whether there needs to be something presented to the grand jury in the first place. So those are things that Congress really needs to deal with, rather than for this court to try to create some type of remedy that the government is talking about. And frankly, if this court gives its blessing to this statute, you look at all of the crimes that are included here, and they include A, B, C, and D crimes that are applied in 3583K. The lowest one here is 2425 under Title 18, which carries only a five-year sentence, and a ten-year sentence if you committed a second crime. We're looking at a potential life without parole. And you're creating a situation that would transform revocations, which would be a situation that has always been highly discretionary, and it has been something that is focused on the individual defendant and what he needs. And you would change it into a potential adversarial system. There's no reason to believe that if the court were to agree that this Senate, that this 3583K was appropriate, that you wouldn't have, for instance, drug offenses find themselves as a 3583K2 provision. Mr. Lone, you're raising a lot of objections, but, I mean, you can't argue with the proposition that such a system would cure the constitutional violation that you're complaining of. Isn't that right? If you had a jury trial, assuming that you get around these constitutional problems, such as presentment to a grand jury, that the judge is the party that's initiating all of this. The constitutional violation that you're complaining of, the Apprendi-Alain constitutional problem, a jury would cure. Is that right? A jury in a revocation hearing, if that's where the court wanted to go, and if you thought that that is what Congress would do in this situation, it might very well. I think that's right. I think it is what Congress wanted to do. I mean, that question should be thought of, much in the way we think of whether to sever unconstitutional provisions, as a question of congressional intent. Which system would Congress rather? Would they want this provision severed, or would they want the whole statute to fall? Similarly, would they want a jury impaneled, or would they want the statute to fall? And how can we think that Congress would not have rather impaneled a jury? Because the entire tradition of supervised release, and, in fact, parole and probation, has always been highly discretionary. Because, and Congress has recognized that throughout the time. And, in fact, in terms of when it enacted the Sentencing Reform Act in 1984. It seems to me that now you're arguing against yourself on the merits. I mean, you have all these objections to what the remedy would be. Oh, it's going to interfere with the discretion of the judge and all that. But if you made those arguments when you were talking about the merits, they would certainly cut against you. Clearly, the Court can say that a jury should be imposed in a revocation hearing. But it would fundamentally alter the way in which revocations have been handled. It would alter it. It would make it constitutional. Well, but it would create an adversarial system, potentially, that would be quite a bit different from what we've known for revocation proceedings. Do you have any idea how many revocation proceedings there are every year? There are numerous revocation proceedings. There aren't many revocation proceedings under 3583K, I don't believe. But the total number of revocation proceedings. Maybe Mr. Fagan has an idea. So we know what we're dealing with, with some of these potential arguments. And that's one of the problems that you have. If you put juries into those revocation proceedings, it would create immense problems. It's something that a court would really need to think about, how all of the ramifications and how these would be done. That's really not something the Court should be doing. It's something that Congress should be doing, if that's what they really want to do. So your question is, who would be the prosecutor, for example? Well, you have the issue as to whether or not, if you allowed a jury trial, whether or not there would be any, you would still allow any type of contact between the probation office and the United States Attorney's Office. You have a lot of additional issues that may very well come up, if you decide that a jury trial should be allowed in these cases. This is a case where the defendant, in the initial, with his, he was given a 38-month sentence. In this under 3583K, he was given a five-year revocation sentence, which is more than what he received. He was looking at a 10-year maximum, but in this under 3583K, he's now looking at a sentence of life without parole. If the United States Attorney had actually prosecuted Mr. Heyman under the recidivist statute, he would have been looking at a maximum of 20 years in prison. This system under 3583K essentially circumvents the tried-and-true system of indictment, and it makes it somewhat a dead letter in these types of situations. If there were no mandatory minimum here and everything else, though, stayed the same in terms of what the, what was imposed, would there be a constitutional problem? There would be because of the maximum penalty of life without parole. That creates immense problems under the due process clause. And under this Court's holding in Winship, you look at the permanency of the threatened loss. Obviously, a person, you also consider the nature of the privacy interest. The most sacred privacy interest that a person has is their own liberty, and yet you're looking at a potential life without parole prison sentence. So, yes. And the same thing applies looking at the maximum sentence under the Sixth Amendment and Article III, Section 2. Are you representing a client who was given life without parole? No. But he was, it doesn't matter. What does matter is that he was looking at a maximum sentence of life without parole. And the Court's cases in Frank, Duncan, and Blandin v. City of Las Vegas all point out to the fact that when you consider the right to jury trial, you look at what the maximum prison sentence could be. And the same thing applies with the due process right. If there are no more further questions, I'll play the rest of my time. Thank you, counsel. Thank you. Two minutes, Mr. Fagan. Thank you, Mr. Chief Justice. I just want to make two very important but fairly quick points. One is that they're defending a judgment under which this statute was struck down as facially unconstitutional. It cannot be applied no matter what the original offense was or what the supervised release violation was. So someone who kidnapped a minor and then kidnaps a minor again, an offense that even if prosecuted under the criminal laws would subject the defendant to 20 years to life imprisonment, would have to be treated the same way. What we're talking about in this case is an as applied, as applied in this case, and this is the second point, we're talking about just a five-year sentence, which is the only kind of sentence, the only kind of re-imprisonment term we are familiar with under this statute, with a few exceptions that are listed in our reply brief, and there may be one more we're aware of. Everyone agrees that the jury's verdict authorized re-imprisonment for possessing child pornography. The only question is just what the legal significance of that fact was. When the judge was re-imprisoning, should the judge look at E3 or should the judge look at K? The only distinction Respondent has drawn between E3 and K, the one that he's emphasizing, the only distinction applicable to him is the absence of discretion. As I was explaining earlier, that is an issue where you could potentially make a substantive claim that under particular circumstances, the application of a five-year minimum sentence would be unlawful under this Court's decision in Bearden, as explained in Black v. Romano. That's not the claim they're making. They're trying to defend the statute, a judgment under which the statute was struck down as facially unconstitutional by hypothesizing punishments to which he was never subjected, to which no defendant were aware of has ever been subjected. Under K. Your Honor, if only K existed, I don't see how they'd have a claim. Let's just assume E3 didn't exist and the default penalty under E3 were five years to life. I don't see how they'd have a claim. They don't have some free-floating claim that a five-year minimum re-imprisonment term is too much for a violation of supervised release. Indeed, under some circumstances, E3 would allow a five-year term of re-imprisonment for a violation of supervised release. Sotomayor, it's too much for the original crime that didn't require it. Well, so, Your Honor, the original crime authorized the period of supervised release. Authorized it, but didn't require a minimum. Well, Your Honor, I don't understand what principle they're relying on to say that there is no – may I finish, Mr. Chief Justice? Sure. To say that it is unconstitutional for Congress to prescribe a five-year minimum period of revocation for very serious crimes for very serious defendants. Thank you. Mr. Feigin, you didn't get to your second of the two points. I kind of weaved it in there, Your Honor, but the main point I was trying to make on the second point is just that everyone agrees that re-imprisonment was authorized, and so a lot of the arguments that are being made here, as Justice Alito pointed out earlier, would call into question not only the constitutionality of supervised release in general, but also the constitutionality of parole and probation, which this Court has upheld in its precedents. Thank you. Thank you, counsel. The case is submitted.